**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 20, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 20, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 100012-0 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JAVIER GARZA, | ) | |
| | ) | Filed: October 20, 2022 |
| Petitioner. | ) | |
| | ) | |
| | ) | |

OWENS, J. — RCW 13.50.260(3) allows juvenile offenders to move a court to vacate and seal its "order and findings" under certain circumstances. Javier Garza was found guilty of third degree rape when he was 17 years old. Twenty-five years after his adjudication, Garza successfully petitioned for relief from registering as a sex offender. Garza then moved to vacate and seal his juvenile adjudication under RCW 13.50.260(3). The court found it had no authority to vacate juvenile adjudications under this provision and denied the motion. The Court of Appeals affirmed on different grounds. *State v. Garza*, No. 37578-1-III (Wash. Ct. App. June 24, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/375781_unp.pdf. The Court

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Garza*
No. 100012-0

of Appeals held that because RCW 13.50.260(3) applied only to "order[s] and findings," juvenile adjudications did not qualify because adjudications were judgments, not orders. *Id.*, slip op. at 3.

This case asks whether a juvenile adjudication may be vacated and sealed under RCW 13.50.260(3). Because the plain language of the statute grants trial courts discretion to vacate and seal both adjudications and diversions, we hold that juvenile adjudications may be vacated and sealed under RCW 13.50.260(3). We reverse the Court of Appeals and remand for a new hearing.

FACTS AND PROCEDURAL HISTORY

When Javier Garza was 17 years old, he was found guilty of third degree rape. At the time of the conviction, Garza and his mother were frequent victims of domestic abuse by Garza's father, and Garza "'went crazy, doing drugs'" to cope. Clerk's Papers (CP) at 15. Garza was sentenced to 13 days' detention and 12 months of probation and was also required to register as a sex offender pursuant to RCW 9A.44.130. Garza successfully completed probation but continued to struggle with destructive behaviors that resulted in his imprisonment in 2008. However, Garza began to turn his life around upon his release from prison. Garza found long-term employment and became involved in the community through church. He now lives with his wife and four children.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In 2019, Garza moved for relief from the duty to register as a sex offender. The State did not object, and the court granted Garza's motion. Garza then moved to vacate and seal his juvenile adjudication pursuant to RCW 13.50.260. Unlike the motion for relief from registration, the State opposed this motion. The State argued RCW 13.50.260 provides vacation and sealing only for juvenile diversions, not adjudications. The trial court noted it had routinely signed orders granting motions to vacate and seal under RCW 13.50.260 because the State had not objected. Verbatim Tr. of Proceedings at 9. Despite recognizing "how hard [Garza]'s worked" to reform himself and noting how the court had "commended him and continue[d] to commend him in that regard" at the relief from registration hearing, the court agreed with the State and denied Garza's motion to vacate. *Id.*; CP at 38.

Garza filed a notice of appeal and a new motion to vacate his juvenile adjudication in May 2020, renewing his statutory arguments and adding claims that RCW 13.50.260 is unconstitutional under the Fourteenth Amendment of the United States Constitution and article 1, section 12 of the Washington State Constitution. The trial court rejected Garza's arguments, and the Court of Appeals affirmed on other grounds. *Garza*, slip op. at 3-4. In its short, unpublished opinion, the Court of Appeals held that a juvenile adjudication is a judgment, not an order, and therefore did not qualify for vacation under RCW 13.50.260. The Court of Appeals also rejected Garza's constitutional claims.

*State v. Garza*
No. 100012-0

Garza filed a petition for review in our court, and we granted review only on the issue of interpreting RCW 13.50.260. The King County Department of Public Defense, the American Civil Liberties Union of Washington, the Washington Defender Association, the Public Defender Association, TeamChild, Collective Justice, Legal Counsel for Youth and Children, Creative Justice, the Children's Alliance, the Gault Center, Partners for Our Children, Columbia Legal Services, the Center for Children & Youth Justice, the Fred T. Korematsu Center for Law and Equality, and the Mockingbird Society submitted a joint amici curiae brief in support of Garza.

ANALYSIS

A. *Background on Juvenile Diversions*

Because much of this case focuses on whether RCW 13.50.260(3) applies to juvenile adjudications as well as diversions, a brief summary of the diversion process is helpful. The juvenile criminal justice system in our state seeks to fulfill, through the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, "the dual purpose of holding juveniles accountable and fostering rehabilitation for reintegration into society." *State v. S.J.C.*, 183 Wn.2d 408, 421, 352 P.3d 749 (2015). Pursuant to these dual purposes, when a juvenile is accused of committing an offense, the prosecutor must decide whether to file an information in juvenile court or divert the case. RCW 13.40.070(3). An information must be filed if the alleged offense is a sex or violent

4

offense under RCW 9.94A.030, with certain exceptions. RCW 13.40.070(5). The

prosecutor shall divert the case if the alleged offense is a "misdemeanor or gross

misdemeanor or violation and the alleged offense is the offender's first offense or

violation." RCW 13.40.070(6). The prosecutor shall also divert the case if the

alleged offense is one of the enumerated sexual offenses in RCW 13.40.070(7). If the

alleged offense does not fall under subsections (5), (6), or (7), then the prosecutor has

the discretion to file an information or divert the case. RCW 13.40.070(8). In making

this decision, the prosecutor may consider "the length, seriousness, and recency of the

alleged offender's criminal history and the circumstances surrounding the commission

of the alleged offense." *Id*.

A diversion results in the signing of an agreement between the juvenile and a

diversion unit. RCW 13.40.080(1). Under a diversion agreement, the juvenile agrees

to fulfill certain conditions in lieu of prosecution. *Id*. Such conditions include

community service, paying restitution, counseling, and abiding by a curfew. RCW

13.40.080(2). The diversion agreement becomes part of the juvenile's criminal

record. RCW 13.40.080(11). Under certain circumstances, criminal records

consisting solely of diversions may be destroyed once the juvenile becomes an adult.

RCW 13.50.270. Having outlined what a diversion is and how a juvenile qualifies for

one, we now consider whether RCW 13.50.260(3) is limited to diversions or also

encompasses adjudications.

B. *RCW 13.50.260(3) Unambiguously Applies to Juvenile Adjudications*

This case requires us to interpret RCW 13.50.260(3). Statutory interpretation is a question of law we review de novo. *State v. Haggard*, 195 Wn.2d 544, 547, 461 P.3d 1159 (2020). The court's duty is to construe statutes in the manner that "best fulfills the legislative purpose and intent." *Id*. at 547-48. Therefore, if the statute's meaning is plain on its face, this court must give effect to the plain meaning "as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We determine a statute's plain meaning by looking to its text, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. *Haggard*, 195 Wn.2d at 548 (citing *Campbell & Gwinn*, 146 Wn.2d at 9-12).

Enacted in 2014, RCW 13.50.260 provides a framework for the administrative sealing of juvenile records. The statute directs courts to automatically seal juvenile records so long as the juvenile is not adjudicated for a disqualifying offense under RCW 13.50.260(1)(c). For juvenile records that cannot be administratively sealed, the juvenile may move the court to vacate and seal their records. RCW 13.50.260(3) states in full:

> If a juvenile court record has not already been sealed
> pursuant to this section, in any case in which information
> has been filed pursuant to RCW 13.40.100 or a complaint
> has been filed with the prosecutor and referred for
> diversion pursuant to RCW 13.40.070, the person who is
> the subject of the information or complaint may file a

> motion with the court to have the court vacate its order and findings, if any; resolve the status of any debts owing; and, subject to RCW 13.50.050(13), order the sealing of the official juvenile court record, the social file, and records of the court and of any other agency in the case, with the exception of identifying information under RCW 13.50.050(13).

The statute plainly states that if a juvenile court record has not already been administratively sealed, then "in any case in which information has been filed . . . or a complaint has been filed with the prosecutor . . . for diversion" the subject juvenile may file a motion to vacate and seal the court's order and findings. RCW 13.50.260(3).

### 1. *A Juvenile Adjudication Is an Order within the Meaning of RCW 13.50.260(3)*

The Court of Appeals held that a juvenile adjudication is a judgment, not an order, and therefore did not fall under RCW 13.50.260(3). *Garza*, slip op. at 3-4. Neither chapter 13.50 RCW nor the JJA define what an "order" is. However, the statutory scheme of the JJA refers to orders throughout, including disposition orders. In the juvenile system, a judge hears the case against the juvenile and enters findings of fact. RCW 13.40.130(3)-(4). The court then holds a disposition hearing and enters a dispositional order if the juvenile is found to have committed an offense. RCW 13.40.150. Therefore, within the framework of the JJA, a juvenile adjudication is equivalent to an order and findings.

*State v. Garza*
No. 100012-0

The State argues that "order" could refer to the summons a court issues to an alleged juvenile offender when there is probable cause. While this is possible, it does not preclude the statute from also applying to adjudications. Because the language of the statute does not specify a type of order, RCW 13.50.260(3) encompasses both summons and adjudications. Accordingly, the Court of Appeals erred when it held that a juvenile adjudication did not qualify as an order within the meaning of RCW 13.50.260(3).

### 2. *RCW 13.50.260(3) Is Not Limited to Juvenile Diversions*

The State argues RCW 13.50.260(3) applies only to juvenile diversions, not adjudications, but the statute's plain language directly refutes this claim. "'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). RCW 13.50.260(3) states it applies "in any case in which information has been filed pursuant to RCW 13.40.100 or a complaint has been filed with the prosecutor and referred for diversion pursuant to RCW 13.40.070." RCW 13.40.100 governs how a court may notify an alleged offender who is the subject of a filed information. And as detailed earlier, no information is filed if a prosecutor refers a case for diversion. Therefore, RCW

8

13.50.260(3) cannot refer solely to juvenile diversion cases because it would render the language referring to cases in which an information has been filed meaningless.

The State claims the language saying the juvenile may file a motion to have the trial court vacate and seal "its order and findings, if any," indicates RCW 13.50.260(3) applies only to diversions because a juvenile adjudication would always have an order of disposition. *See* Suppl. Br. of Resp't at 8. Thus, according to the State, "if any" would be superfluous if the statute included juvenile adjudications. This overlooks that RCW 13.50.260(3) refers to cases in which an information has been filed and diversions. An adjudication results from a juvenile having an information filed against them and the court finding the juvenile guilty. Therefore, the "if any" language is not superfluous because the statute encompasses juveniles who have adjudications, where there is an order and findings, and juveniles who have diversions, where there is no order and findings. In summary, the "if any" language is not superfluous.

The State also claims RCW 13.50.260(3) cannot include juvenile adjudications because it would create the absurd result of making it easier for juveniles to vacate an adjudication than to seal one. This argument ignores the specific language of the statute. RCW 13.50.260(3) allows eligible juveniles to file a motion to have the court "vacate its order and findings, if any; resolve the status of any debts owing; *and*, subject to RCW 13.50.050(13), order the sealing of the official juvenile court record."

*State v. Garza*
No. 100012-0

(Emphasis added.) The conjunctive "and" demonstrates that the legislature intended for juveniles to file a motion under subsection (3) to vacate and seal, not just to vacate. Therefore, to succeed on this motion, the juvenile must still meet the sealing requirements enumerated in RCW 13.50.260(4)(a), (b), and (c).

The language of RCW 13.50.260(4)(b) also indicates subsection (3) was intended to apply to both adjudications and diversions. Subsection (4)(b) explains that "[t]he court shall grant any motion to seal records for class B, class C, gross misdemeanor, and misdemeanor offenses and diversions made under subsection (3) of this section" if the juvenile meets certain criteria. The language shows the legislature's intent to group records for certain felonies and misdemeanors, all juvenile adjudications, and diversions together and for the motion to seal to be made under subsection (3). Accordingly, interpreting RCW 13.50.260(3) to apply to juvenile adjudications and diversions does not allow juvenile offenders to skirt around the statutory sealing criteria and render motions to vacate easier to win.

Lastly, the State argues that interpreting RCW 13.50.260(3) to apply to juvenile adjudications would unfairly and absurdly advantage juvenile offenders convicted of serious offenses over those convicted of lesser offenses. Specifically, the State claims RCW 13.50.260(3) cannot apply to adjudications because it would result in juveniles with serious offenses having the opportunity to vacate their adjudications, but not juveniles with lesser offenses because their records would have been administratively

10

State v. Garza
No. 100012-0

sealed. *See* Suppl. Br. of Resp't at 13-16. This argument fails to account for the other method through which juveniles may have their offenses vacated. While there is no provision to vacate adjudications that are administratively sealed under RCW 13.50.260, this is by design. To understand how the JJA balances reintegration with vacation and punishment of persistent offenders, it helps to examine the deferred disposition statute.

RCW 13.40.127 provides that a juvenile is eligible for a deferred disposition so long as the offense they are charged with is not a sex or serious offense, they have not previously committed a felony, they have no prior deferred dispositions, and they do not have two or more previous adjudications. The JJA creates a "strong presumption that the deferred disposition will be granted." RCW 13.40.127(2). If the juvenile successfully completes the terms of the deferred disposition, the court will vacate the conviction and dismiss the case with prejudice. RCW 13.40.127(9)(b). Then, depending on the age of the offender when the disposition is vacated, the court will either seal the offender's juvenile record or set the case to be administratively sealed under RCW 13.50.260. RCW 13.40.127(10). This results in most first-time juvenile offenders having the opportunity to vacate and seal their juvenile adjudication.

Because most first-time offenders will have the opportunity to have a deferred disposition, there is no need to provide a mechanism for vacation in the administrative sealing portion of RCW 13.50.260 since the deferred disposition statute includes a

11

State v. Garza
No. 100012-0

vacation provision. Records subject to administrative sealing in RCW 13.50.260 will either already be vacated, *see* RCW 13.40.127(10), or belong to a juvenile with a criminal history rendering them ineligible for a deferred disposition. The vacation provision in RCW 13.50.260(3) then provides the only opportunity for vacation if a juvenile's first offense is also a serious one. Since a serious offense is not eligible for deferred disposition, RCW 13.50.260(3), in conjunction with the sealing criteria in subsection (4), provides the juvenile a chance to vacate if it is the only criminal mistake they have made. Therefore, the statutory scheme of RCW 13.50.260(3) provides privacy, but not immunity from consequences, for juveniles with criminal histories while giving juveniles with a single serious offense an opportunity to vacate.

In summary, the plain language of RCW 13.50.260(3) applies to both juvenile adjudications and diversions. Applying the statute only to diversions would render much of the language superfluous, which is contrary to our rules of statutory interpretation. Allowing adjudications to be vacated under RCW 13.50.260(3) conforms with the legislature's intent to balance "the dual purpose of holding juveniles accountable and fostering rehabilitation for reintegration into society." *State v. S.J.C.*, 183 Wn.2d at 421.

### 3. Guidance for Trial Court Discretion on Granting a Motion To Vacate

The State is concerned that giving boundless discretion to trial courts to decide motions to vacate and seal under RCW 13.50.260(3) could result in unpredictable

12

State v. Garza
No. 100012-0

outcomes. Garza suggests we use the criteria for sealing found in RCW 13.50.260(4) to guide whether or not the court should grant the motion to vacate and seal. The State correctly points out that sealing and vacation are different. *See, e.g.*, *Barr v. Snohomish County Sheriff*, 193 Wn.2d 330, 337-39, 440 P.3d 131 (2019) (explaining the differing consequences between sealed convictions and vacated convictions). We agree with the State that it would be inappropriate to instruct courts to simply apply the sealing guidelines in RCW 13.50.260(4) to motions to vacate and seal under subsection (3).

However, the sealing criteria in RCW 13.50.260(4) provide a good starting point in helping trial courts determine if they should exercise their discretion to grant a motion to vacate and seal. As explained above, the language of RCW 13.50.260(3) demonstrates that the legislature intended movants to file a motion to vacate *and* seal, not just a motion to vacate or a motion to seal. Therefore, before a trial court grants a motion to vacate and seal under RCW 13.50.260(3), it must confirm that the movant meets the criteria to seal. The trial court should also verify that the record has not already been administratively sealed, as RCW 13.50.260(3) applies only to records not already sealed under other provisions of RCW 13.50.260. Lastly, the trial court should consider the record and use its discretion to determine if the movant has demonstrated sufficient rehabilitation to warrant vacation and sealing. This ties back to the dual purposes of the JJA. The extraordinary relief of vacation should not be

13

granted to juveniles who have not demonstrated the effort required to rehabilitate and reintegrate into society, even if they technically meet the requirements under RCW 13.50.260(3).

C. *The Trial Court Had Authority To Vacate and Seal Garza's Juvenile Adjudication*

Applying our interpretation of RCW 13.50.260(3) to the facts of this case, we conclude the trial court had authority to vacate and seal Garza's juvenile adjudication. Garza was adjudicated guilty of third degree rape, a class C felony. RCW 9A.44.060(2). Therefore, under RCW 13.50.260(4)(b), Garza was eligible to seal his adjudication because he had spent two consecutive years without being convicted of a crime, had no pending criminal cases against him, was relieved of the duty to register as a sex offender, and had no outstanding restitution owed.

Because Garza met the criteria to seal his adjudication and his record had not been administratively sealed, Garza met the qualifications to move the trial court to vacate and seal his adjudication under RCW 13.50.260(3). An information had been filed in Garza's case, as it must have been for a court to adjudicate him guilty of third degree rape. RCW 13.50.260(3) does not require more than a showing from the juvenile that their records had not yet been sealed, the case had an information filed or a diversion agreement, and they qualify for sealing under RCW 13.50.260(4). The trial court could have then exercised its discretion to decide if the evidence of Garza's rehabilitation warranted granting the motion to vacate and seal. This result conforms

14

*State v. Garza*
No. 100012-0

with the JJA's goal of rehabilitating juvenile offenders and presenting them with a chance of reintegrating with the community.

CONCLUSION

We hold the plain language of RCW 13.50.260(3) gives trial courts authority to vacate and seal a juvenile's adjudication. We reverse the Court of Appeals and remand to the trial court for proceedings consistent with this holding.

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Whitener, J.

_____

_____

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

No. 100012-0

LARSEN, J.* (dissenting) — Other than the fact that appellant was adjudicated of this offense in 1995, the facts of this case are not relevant to this decision regarding statutory interpretation. As such, the facts will not be recited in this published opinion to protect the privacy of appellant, who is eligible to have records related to this conviction sealed.

This case involves the interpretation of RCW 13.50.260(3). Petitioner argues the language of the provision allowing him to file a motion to have the court "vacate its order and findings" grants a juvenile court the authority to vacate his adjudication. Both the Superior Court and the Court of Appeals disagreed, finding that "order and findings" did not include adjudications. Because the decision of the Court of Appeals is supported by the statutory scheme regarding criminal history and is also supported by the legislative history of RCW 13.50.260, I would affirm.

We review the meaning of statutes de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). In other words, the statute's "plain meaning" is discerned from all that the legislature has said in the statute *and related statutes* that disclose legislative intent about the provision in question. *Dep't of Ecology v. Campbell & Gwinn, LLC*,

*Judge Cynthia A. Larsen is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

1

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

146 Wn.2d 1, 11, 43 P.3d 4 (2002). Courts resort to aids of statutory construction only if the statute is ambiguous. *Evans*, 177 Wn.2d at 192-93. After this analysis, "[i]f more than one interpretation of the plain language is reasonable, the statute is ambiguous and we must then engage in statutory construction." *Id.* We may then look to legislative history for assistance in discerning legislative intent. *Id.* at 193. In this case, only a review of the statutory scheme regarding juvenile offenses and criminal history as a whole is necessary. However, the legislative history also refutes any interpretation of RCW 13.50.260(3) that authorizes vacation of an adjudication.

I begin with Title 13 RCW, which covers juvenile courts and juvenile offenders. RCW 13.04.011 defines "adjudication" as having the same meaning as "conviction" but "only for purposes of sentencing under chapter 9.94A RCW." However, prior to 2010, that same definition read, "'Adjudication' has the same meaning as 'conviction' in RCW 9.94A.030, and *the terms must be construed identically and used interchangeably*." LAWS OF 2010, ch. 150, § 4 (emphasis added). I mention this only because, despite the change in law, the terms are still used interchangeably at times. *See* RCW 13.40.127, .480.

Chapter 13.40 RCW is titled the Juvenile Justice Act of 1977 and relates to juvenile offenses (the equivalent of adult crimes). Several statutes in chapter 13.40 RCW are relevant in determining the legislative intent behind RCW 13.50.260(3).

RCW 13.40.070 authorizes the diversion of juvenile offenses. There are limits on the number of offenses that can be diverted, and the prosecutor and the juvenile court probation department maintain some discretion. Sex offenses and most violent offenses are not eligible for diversion (second degree robbery and second degree assault are eligible despite falling within the definition of a "violent offense"). RCW 13.40.070(5)(a).

2

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

RCW 13.40.080 includes provisions requiring court action in a diverted case. Under subsection (5)(c), if a juvenile has not paid full restitution by the end of the diversion period, the court must enter a civil order establishing the amount of restitution still owed to the victim and determining the terms and conditions of the restitution, including a payment plan extending up to 10 years. Subsection (7)(c) provides that no divertee may be terminated from a diversion program without being given a court hearing where the juvenile may be heard in person, present evidence, and confront and cross-examine adverse witnesses. The court is then required to enter a written statement as to the evidence relied on and the reasons for any termination after which the prosecutor *may* file an information in juvenile or adult court, depending on the age of the divertee at the time of the termination. RCW 13.40.080(7); JuCR 6.6. The courts findings and order terminating diversion will remain in the court record, even if an information is not filed. In some circumstances, records consisting solely of diversions may be destroyed once the juvenile becomes an adult. RCW 13.50.270.

RCW 13.40.127 authorizes deferred dispositions (formerly deferred adjudications) and is the *only* statute in Title 13 RCW that deals expressly with the vacation of juvenile *convictions* (adjudications). The legislature has determined that neither a sex offense nor a violent offense may be deferred. RCW 13.40.127(1)(a). Additionally, a juvenile is not eligible for a deferred disposition if he or she has a prior felony, has a prior deferred disposition, or has two or more adjudications. RCW 13.40.127(1)(b)-(d). Any juvenile who agrees to a deferral of disposition must stipulate to the admissibility of the facts contained in the police report, acknowledge that it will be entered and used to support a finding of guilt and to impose a disposition if the juvenile fails to comply with the terms of supervision, and waive his or her trial rights. RCW

3

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

13.40.127(3). Following this, the court enters a finding or plea of guilt and then defers order of

disposition. RCW 13.40.127(4).

RCW 13.40.127(9)(b) of that statute provides, in relevant part:

> If the court finds the juvenile is entitled to dismissal of the deferred disposition pursuant to (a) of this subsection, the juvenile's *conviction* shall be vacated and the court shall dismiss the case with prejudice…Whenever a case is dismissed with restitution still owing, the court shall enter a restitution order pursuant to RCW 7.80.130 for any unpaid restitution. Jurisdiction to enforce payment and modify terms of the restitution order shall be the same as those set forth in RCW 7.80.130.

(Emphasis added.) RCW 13.40.127 (10)(a) states:

> (i) Any time the court vacates *a conviction* pursuant to subsection (9) of this section, if the juvenile is eighteen years of age or older and the full amount of restitution owing to the individual victim named in the restitution order, excluding restitution owed to any insurance provider authorized under Title 48 RCW has been paid, the court shall enter a written order sealing the case.
> (ii) Any time the court *vacates a conviction* pursuant to subsection (9) of this section, if the juvenile is not eighteen years of age or older and full restitution ordered has been paid, the court shall schedule an administrative sealing hearing to take place no later than thirty days after the respondent's eighteenth birthday, at which time the court shall enter a written order sealing the case. The respondent's presence at the administrative sealing hearing is not required.
> (iii) Any *deferred disposition vacated prior to June 7, 2012, is not subject to sealing under this subsection*.

(Emphasis added.) RCW 13.40.127(10)(b) provides that "[n]othing in this subsection shall

preclude a juvenile from petitioning the court to have the records of his or her deferred

dispositions sealed under RCW 13.50.260." Subsection (10)(c) states that "[r]ecords sealed

under this provision shall have the same legal status as records sealed under RCW 13.50.260."

This brings us to the statute in question. Chapter 13.50 RCW is titled "Keeping and

Release of Records by Juvenile Justice or Care Agencies." RCW 13.50.260 was enacted in 2014

with the passage of Second Substitute House Bill 1651 (2SHB 1651). The authors recognized

4

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

how difficult it was for former juvenile offenders to file motions to have their matters sealed and how infrequently they did so[1] and, thus, created an administrative sealing process. The original bill would have simply made juvenile offender records confidential in most cases, removing the need for sealing.  After numerous amendments to the original bill, the legislation that passed no longer made this sweeping change but, instead, provided for the sealing of records without requiring the juvenile to file a motion under certain circumstances.

RCW 13.50.260 is titled "Sealing hearings—Sealing of Records." The first section of the statute requires the court to hold regular sealing hearings. During these regular sealing hearings, the court "shall" administratively seal an individual's juvenile record pursuant to the requirements of subsection. RCW 13.50.260(1)(a). Although the juvenile record must be sealed, the social file may be available to any juvenile justice or care agency when an investigation or case involving the juvenile subject of the records is being prosecuted by the juvenile justice or care agency or when the juvenile justice or care agency is assigned the responsibility of supervising the juvenile. *Id.* The juvenile respondent's presence is not required at any administrative sealing hearing. *Id.* Administrative sealing hearings are set by the court at the time of the disposition hearing.  RCW 13.50.260(1)(b). However, if one of the offenses for which the court has entered a disposition is at the time of commission of the offense a most serious offense, a sex offense, or certain types of drug offenses, there is no administrative sealing. RCW 13.50.260(1)(c).  The administrative sealing provisions do not authorize the court to vacate any "order and findings" or an adjudication or conviction. While "most serious offenses" are excluded from administrative sealing, "violent offenses" are not.  However, as discussed above,

---

[1] "It takes time, money, and an attorney to get a record sealed. Only 6 percent of people eligible to have their records sealed do so because they either don't know that they can seal their records, or can't afford an attorney."  H.B. Rep. on 2SHB 1641, at 5, 63d Leg., Reg. Sess. (Wash. 2014).

5

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

"violent offenses" are not eligible for a deferred disposition and most violent offenses are excluded from diversions. Thus, second degree arson, second degree robbery, and drive-by shooting are excluded from a deferred disposition, but not from administrative sealing. RCW 9.94A.030(32) and (58). As a result, an offender charged with one of these offenses may never have a chance at a deferred disposition but may have his or her case administratively sealed and then never be eligible for the "vacation" the majority wishes to provide for "most serious" and sex offenses under RCW 13.50.260(3).

RCW 13.50.260(2) requires the court to "immediately" seal "the official juvenile court record upon the acquittal after a fact finding or upon the dismissal of charges with prejudice, subject to the state's right, if any, to appeal the dismissal." This subsection does not apply to dismissals of a deferred disposition under RCW 13.40.127 and did not apply prior to 2014. *See* Laws of 2014, ch. 175.

Subsection (3) is the section at issue in this case. RCW 13.50.260(3) provides, in relevant part:

> If a juvenile court record has *not already been sealed pursuant to this section*, in any case in which information has been filed pursuant to RCW 13.40.100 or a complaint has been filed with the prosecutor and referred for diversion pursuant to RCW 13.40.070, the person who is the subject of the information or complaint may file a motion with the court to have the court *vacate its order and findings*, if any; resolve the status of any debts owing; and, subject to RCW 13.50.050(13), order the sealing of the *official juvenile court record*, the *social file*, and *records* of the court and of any other agency in the case.

(Emphasis added.) Subsection (3) is essentially a "catchall" for those cases that were not administratively or automatically sealed under subsections (1) or (2) and *specifically excludes* matters that were administratively sealed under subsections (1) or (2). In addition to the offenses ineligible for administrative sealing under subsections (1) and (2), this provision covers all cases,

6

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

from misdemeanor to serious felony, that were completed, in whatever fashion, including diversions, prior to 2014. The sealing of records under subsection (3) applies to an entire "juvenile court record." Therefore, an individual may request to vacate and seal records where no conviction resulted if those records have not been administratively sealed.

Subsection (4) sets forth clear criteria for the court to use when deciding *a motion to seal* under RCW 13.50.260(3). It sets forth *no criteria* for deciding whether or not to vacate an "order and findings." The majority finds that a movant must file both a motion to vacate and a motion to seal, "not just a motion to vacate or a motion to seal" and, therefore, the court must confirm that the movant meets the criteria to seal before granting a motion to vacate. Majority at 13. The majority goes on to state, "Lastly, the trial court should consider the record *and use its discretion* to determine if the movant has demonstrated sufficient rehabilitation to warrant vacation *and sealing*" *Id*. (emphasis added). While this may be good policy, it is not supported by the statute or the statutory scheme.

RCW 13.50.260(4) specifically states, "The court *shall grant any motion to seal* records for class A offenses made pursuant to subsection (3) of this section if…" and then sets forth the requirements for sealing. (Emphasis added.) Subsection (4) is completely silent when it comes to motions to vacate. If the movant meets the criteria for sealing in subsection (4), the trial court has no discretion, it must seal. If the majority is correct, then a movant is *entitled* to vacate a limitless number of most serious offense convictions once the criteria in subsection (4) is met. Again, contrary to the implications of the majority opinion, there is no limitation on the number of offenses that can be "vacated" and sealed under this section. And, again, while this may be good policy if it applied uniformly, it would not apply to matters administratively sealed and would therefore be both unjust and absurd. This is clearly not the intent of the legislature.

7

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

If the language regarding moving the court to vacate its order and findings was meant to allow the vacation of an adjudication, it would lead to absurd results. The majority's argument that this is by design is anomalous. If the majority is correct, there is absolutely nothing prohibiting a person who has had a prior deferred disposition vacated from having one or more violent, most serious, and/or sex offenses also vacated, despite the legislature's clear intent to make these offenses ineligible for vacation under RCW 13.40.127. On the other hand, a person who has had one or more relatively minor offenses sealed under subsection (1), may never have those convictions vacated. Similarly, a 13-year-old who is granted a deferred disposition on a relatively minor nonviolent offense but does not successfully complete the conditions of the deferred disposition due to a lack of maturity will move to disposition. This conviction will likely be administratively sealed and never be eligible for vacation, even if that was his or her only offense and he or she is completely rehabilitated and would otherwise qualify as an adult.

There is yet further support that RCW 13.50.260(3) does not authorize the court to vacate an adjudication, a conviction, or a judgment, within the plain language of the statutory scheme. RCW 13.50.010(1)(c) makes clear that "order and findings" is different than an adjudication. This section defines the "official juvenile court file" as the "legal file of the juvenile court containing the petition or information, motions, memorandums, briefs, notices of hearing or appearance, service documents, witness and exhibit lists, *findings* of the court and *court orders*, agreements, *judgments*, decrees, notices of appeal, as well as documents prepared by the clerk, including court minutes, letters, warrants, waivers, affidavits, declarations, invoices, and the index to clerk papers." (Emphasis added.) As found by the Court of Appeals below, it is evident that the legislature differentiates between findings, orders, and judgments. An adjudication is a judgment. *See* JuCR 7.6(b); CrR 4.2(d) ("The court shall not enter a *judgment upon a plea of*

8

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

*guilty* unless it is satisfied that there is a factual basis for the plea." (emphasis added)).  A disposition hearing happens after an adjudication of guilt.  There may be findings in a disposition order related to a "manifest injustice," use of a firearm, use of a motor vehicle, etc.  Vacation of the findings contained in a disposition order and the disposition order itself may grant some relief to an offender, but doing so does not vacate an adjudication.

Finally, of relevance to this decision is subsection (8), which states that any adjudication of a juvenile offense or a crime or charging of an adult felony subsequent to sealing has the effect of nullifying a sealing order. However, the court may reseal the record upon disposition of the subsequent matter if the case meets the sealing criteria under this section and the record has not previously been resealed. RCW 13.50.260(8). There is no exception stated for records vacated under RCW 13.50.260(3).

It is also useful to look at the laws regarding calculating an offender score for purposes of future disposition or sentencing.  RCW 13.40.0357 sets forth the "juvenile offender sentencing standards."  Subsection (2) states "The horizontal axis of the grid is the number of *prior adjudications* included in the juvenile's criminal history. Each prior *felony adjudication* shall count as one point. Each prior violation, misdemeanor, and gross misdemeanor *adjudication* shall count as 1/4 point. Fractional points shall be rounded down." (Emphasis added.)

RCW 13.40.020(9) defines "criminal history" as including criminal complaints against the respondent for which, prior to the commission of a current offense:

> (a) The allegations were found correct by a court … or
> (b) The criminal complaint was diverted by a prosecutor pursuant to the provisions of this chapter on agreement of the respondent and after an advisement to the respondent that the criminal complaint would be considered as part of the respondent's criminal history. *A successfully completed* deferred adjudication that

9

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

> was entered before July 1, 1998, or *a deferred disposition shall not be considered part of the respondent's criminal history*.

(Emphasis added.) Notably, while a successfully completed deferred disposition under RCW 13.40.127 is excluded from criminal history, records "vacated" under RCW 13.50.260 are not excluded.

Similarly, the legislature also did not exclude records "vacated" under RCW 13.50.260(3) from the offender's adult criminal history. Under 9.94A.030(9), "conviction" means "an adjudication of guilt pursuant to Title 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, *and acceptance of a plea of guilty*." (Emphasis added.) *See also State v. Cooper*, 176 Wn.2d 678, 684-85, 294 P.3d 704 (2013) ("Based upon a plain reading of the statute, we hold Cooper's pleas of guilty to the two 2008 offenses for which he received a deferred sentence in Texas were convictions in Washington for the purpose of calculating his offender score."); *State v. Lowe*, 173 Wn. App. 390, 393, 293 P.3d 1287 (2013) (where the court dismissed a deferred disposition under RCW 13.40.127 and did not enter a disposition order because probation did not move to revoke the deferred disposition in a timely manner, but the court did not vacate the conviction because the respondent had not successfully completed the terms of the deferred disposition, the conviction was properly included in the respondent's criminal history).

RCW 9.94A.030(11) defines "criminal history" as a "defendant's prior convictions and juvenile adjudications." RCW 9.94A.030(11)(b) allows removal of a conviction from a defendant's criminal history "only if it is vacated pursuant to *RCW 9.96.060, 9.94A.640, 9.95.240,* or a similar *out-of-state* statute, or if the conviction has been vacated pursuant to a governor's pardon." (Emphasis added.) RCW 9.94A.525 instructs the court on how to calculate an adult's "offender score" for purposes of computing a standard range conviction. RCW

10

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

9.94A.525(2) describes the period of time during which prior convictions are included in the

offender score and specifically states that the subsection applies to both adult and juvenile prior

convictions.

The statutes authorizing vacating convictions that the legislature has specifically

excluded from criminal history provide additional proof that when the legislature intends to

address the vacation of convictions—it does so explicitly. RCW 9.94A.640; RCW 9.96.060;

RCW 9.95.240.

First, RCW 9.94A.640, entitled "Vacation of offender's record of conviction," provides

the following:

> (1) Every offender who has been discharged under RCW 9.94A.637 may apply to the
> sentencing court for a *vacation of the offender's record of conviction.* If the court finds
> the offender meets the tests prescribed in subsection (2) of this section, the court may
> clear *the record of conviction* by: (a) Permitting the offender to withdraw the offender's
> plea of guilty and to enter a plea of not guilty; or (b) if the offender has been convicted
> after a plea of not guilty, by the court setting aside the verdict of guilty; and (c) by the
> court dismissing the information or indictment against the offender.

(Emphasis added.) Subsection (2) of this statute provides criteria for the court to vacate a

conviction.

Second, RCW 9.96.060, entitled "Vacating records of conviction for misdemeanor and

gross misdemeanor offenses," also provides clear direction regarding how and when a conviction

can be vacated:

> (1) When *vacating a conviction* under this section, the court *effectuates the vacation* by:
> (a)(i) Permitting the applicant to withdraw the applicant's plea of guilty and to enter a
> plea of not guilty; or (ii) if the applicant has been convicted after a plea of not guilty, the
> court setting aside the verdict of guilty; and (b) the court dismissing the information,
> indictment, complaint, or citation against the applicant and vacating the judgment and
> sentence.

11

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

(Emphasis added.) Subsection (2) of RCW 9.96.060 provides nine requirements that must be satisfied in order for the vacation to be granted—for example, the court cannot vacate the record of a conviction if the applicant has not completed all of the terms of the sentence for the offense, there are criminal charges pending against the applicant, or the offense is one of the numerous excluded offenses. RCW 9.96.060(2)(a)-(i). This level of specificity differs sharply from the language of RCW 13.50.260(3), which references vacation without any guidelines to indicate when vacation is and is not appropriate.

The same is true for RCW 9.95.240, entitled "Dismissal of information or indictment after probation completed—Vacation of conviction." Subsection (2)(a) of this provision includes similar language related to the vacation of a conviction, and it expressly uses these words. ("After the period of probation has expired, the defendant may apply to the sentencing court for a vacation of the defendant's record of conviction under RCW 9.94A.640. The court may, in its discretion, clear the record of conviction if it finds the defendant has met the equivalent of the tests in RCW 9.94A.640(2) as those tests would be applied to a person convicted of a crime committed before July 1, 1984.").

Unlike each of these statutes authorizing the vacation of convictions and RCW 13.40.127, there is nothing in RCW 13.50.260(3) that actually says a conviction or adjudication may be vacated. When looking at each of the other statutes on this topic, it is clear that the language is missing from RCW 13.50.260(3) because the legislature did not intend to authorize the vacation of adjudications under RCW 13.50.260(3).

In summary, once the entire statutory scheme is considered, it is clear on the face of the provision that the legislature did not intend to authorize the vacation of adjudications or convictions in RCW 13.50.260(3). Had that been the intent, it would have specifically stated as

12

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

much, as it has done in every other statute authorizing vacation of convictions. Further, it would

have set forth criteria for vacating a conviction as it has done in every other statute that

authorizes vacation. Finally, it would have given this act some effect by excluding such vacated

convictions from an offender's criminal history. There are numerous types of "orders and

findings" that could be vacated under this statute. This could include an order on restitution, an

order and findings after a decline hearing, an order and findings regarding an offender's release

on personal recognizance or the setting of bail, a finding of probable cause, findings and an order

terminating diversion, etc. "Order and findings" clearly does not mean "adjudication." There is

no need to go further before affirming the decisions below.

Legislative History

While looking at the legislative history is unnecessary, it is instructive. The final bill

language of 2SHB 1651 makes it clear that in enacting this law, the legislature was weighing the

competing interests of rehabilitation and reintegration of juvenile offenders against the public's

access to the court records of these juvenile offenders. *See* LAWS OF 2014, ch. 175 ("The primary

goal of the Washington state juvenile justice system is the rehabilitation and reintegration of

former juvenile offenders.… When juvenile court records are publicly available, former juvenile

offenders face substantial barriers to reintegration, as they are denied housing, employment, and

education opportunities on the basis of these records."). In doing so, the legislature clearly found

the policy goals of rehabilitation and reintegration to be more significant than continued access

to juvenile records, stating the following:

> The legislature declares it is the policy of the state of Washington that the interest in
> juvenile rehabilitation and reintegration constitutes compelling circumstances that
> outweigh the public interest in continued availability of juvenile court records. The
> legislature intends that juvenile court proceedings be openly administered but, except in

13

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

limited circumstances, the records of these proceedings be closed when the juvenile has reached the age of eighteen and completed the terms of disposition.

*Id*. 2SHB 1651 and its related bill reports show the clear intent of the legislature in enacting 13.50.260 was limiting *access to* juvenile court records and *not* vacating the adjudications of juvenile offenders.

This idea is supported by the following staff summary of public testimony in support of 2SHB 1651:

Washington is one of eight states that does not have juvenile records covered by confidentiality, and is one of three states that sell those juvenile records. The juvenile justice system is founded on the core principle of rehabilitation. When youth make serious mistakes, we hold them accountable and give them an opportunity to earn a fresh start after they restore the harm that has been done by their actions. Availability of juvenile offender records has an impact on the ability of youth to later get education, jobs, and housing. It reduces opportunity for the youth to succeed in life as well as to support their communities and the general economy. Public accessibility of juvenile offense records increases unemployment, trapping youth in a cycle of homelessness and poverty, and thus creating a drain on state and local resources. Accessibility also dramatically increases the chances of youth to re-enter the juvenile justice system or the adult criminal justice system. The impacts disproportionately fall on minorities. It takes time, money, and an attorney to get a record sealed. Only 6 percent of people eligible to have their records sealed do so because they either don't know that they can seal their records, or can't afford an attorney.

H.B. REP ON 2SHB 1651, at 5, 63d LEG., REG. SESS. (Wash. 2014).

It is clear that the purpose of RCW 13.50.260 is to eliminate *access* to juvenile records for potential employers, landlords, and the general public. This objective is accomplished within RCW 13.50.260. RCW 13.50.260(6)(a) provides,

If the court enters a written order sealing the juvenile court record pursuant to this section, it shall, subject to RCW 13.50.050(13), order sealed the official juvenile court record, the social file, and other records relating to the case as are named in the order. *Thereafter, the proceedings in the case shall be treated as if they never occurred, and the subject of the records may reply accordingly to any inquiry about the events, records of which are sealed. Any agency shall reply to any*

14

*State v. Garza*, No. 100012-0 (Larsen, J.P.T., dissenting)

> *inquiry concerning confidential or sealed records that records are confidential,*
> *and no information can be given about the existence or nonexistence of records*
> *concerning an individual.*

(Emphasis added.)

This provision achieves the stated goals of the legislature in enacting the statute by making the records unavailable to the public and treating the adjudications as if they never occurred. There is no indication in the legislative history that the intent behind RCW 13.50.260 was to vacate adjudications or convictions. When that is the intent of the legislature, it makes it clear in the statutory language.

For all of these reasons, I would affirm.

_____
Larsen, J.P.T.

_____
Madsen, J.

_____
Stephens, J.

15